895 F.2d 845
 20 Bankr.Ct.Dec. 341, Bankr. L. Rep. P 73,229
 In re STADIUM MANAGEMENT CORP., Debtor.
ANHEUSER-BUSCH, INC., Plaintiff, Appellant,
v.
Stanley MILLER, Trustee, Defendant, Appellee.
In re STADIUM MANAGEMENT CORP., Debtor.
Appeal of KMS PATRIOTS, L.P.
 Nos. 89-1576 to 89-1578.
 United States Court of Appeals,
First Circuit.
 Heard Nov. 9, 1989.
Decided Feb. 8, 1990.
Order on Denial of Rehearing Nos. 89-1577 and 89-1578 March
12, 1990.
Rehearing En Banc Denied in Nos. 89-1577 and 89-1578 March 12, 1990.
 
 Peter Nils Baylor, with whom Frank Glazer and Nutter, McClennen & Fish, Boston, Mass., were on brief, for plaintiff, appellant Anheuser-Busch, Inc.
 Jerome Gotkin, with whom Laura L. Carroll, Widett, Slater & Goldman, Boston, Mass., Carl F. Goodman, and Jones, Day, Reavis & Pogue, were on brief, for appellant KMS Patriots, L.P.
 Daniel C. Cohn, with whom Michael B. Roitman, Michael C. Fee, Nathalie D. Martin and Fine & Ambrogne, Boston, Mass., were on brief, for defendant, appellee.
 Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, VAN GRAAFEILAND, Senior Circuit Judge*.
 BOWNES, Circuit Judge.
 
 
 1
 Appellants, KMS Patriots L.P. (Patriots) and Anheuser-Busch, Inc. (A-B), object to the approval by the bankruptcy court of motions related to the sale to K Corp. of the assets of Stadium Management Corporation, a Chapter 11 debtor (the debtor) that owned Sullivan Stadium (Stadium) in Foxborough, Massachusetts. Neither of the appellants requested a stay of the sale of the debtor pending appeal, so the sale has been completed. We hold that any objections to the sale and the related motions are now moot.
 
 I.
 
 2
 We begin with a brief outline of the parties' claims. The Stadium is the home playing field of the New England Patriots football team (Patriots). The land under the Stadium was leased to the debtor's predecessor in interest, Stadium Realty Trust (SRT), from the town of Foxborough until the year 2022. SRT in turn subleased the Stadium parcel to the Patriots (Patriots sublease). In the fall of 1981, the debtor purchased the Stadium and related assets from SRT.[1] In 1982, the debtor constructed enclosed luxury boxes at the Stadium. On September 15, 1982, A-B and the debtor entered into an agreement under which A-B paid three million dollars in exchange for advertising space within the stadium for a period of twelve years. A-B prepaid the entire contract price.
 
 
 3
 The debtor filed a petition under Chapter 11 of the Bankruptcy Code on February 23, 1989. Stanley Miller, the appellee, was appointed trustee and determined that a sale of the debtor's assets was the best option for the creditors. All of the assets of the debtor were to be sold pursuant to the "Second Amended Motion to Sell the Stadium and Related Assets Free and Clear of Interest" (sale motion) made by the trustee on September 30, 1988. Along with the sale motion the trustee filed ten motions related to the sale which implemented the conditions of the final bid (the related motions). These included a motion for approval of assumption and assignment of the Patriot sublease to the new purchaser and a motion for approval of the rejection of the advertising agreement between Anheuser-Busch and the debtor. The sale motion and related motions were granted by the bankruptcy judge and affirmed by the district court 99 B.R. 137. A number of parties objected to the sale initially, but no stay pending appeal was requested or entered. Because there was no stay or even an appeal of the sale, the parties went ahead with the transaction. The sale was completed on July 6, 1989.
 
 
 4
 Recognizing that the sale cannot now be reversed, neither appellant is explicitly objecting to it now. Instead, the appellants claim to be objecting to the granting of the related motions.
 
 
 5
 The Patriots object to the interpretations given to certain provisions of their sublease in the process of granting the motion for approval and assumption of their sublease. In particular, they contend that they are entitled to the revenues from the luxury boxes and are entitled to certain credits from the Stadium concession operation. The Patriots also argue that the sublease is in default because of the failure of the lessor to make necessary repairs and the failure of the lessor to give adequate assurance of performance of the lease.[2]
 
 
 6
 A-B objects to the rejection of its advertising contract. It characterizes the agreement with the debtor as either a non-executory contract or a lease, neither of which could be rejected.
 
 
 7
 As enticing for an appellate court as these issues might be, the trustee urges us not to consider them because they are moot. The sale of the Stadium has been consummated and the appellants failed to request a stay of the sale pending appeal. The appellants counter that they have not appealed from the sale motion and are not attempting to unravel the sale of the Stadium. Instead, they contend that they are seeking determinations of the claims arising under the related motions. We think that the appellants have construed both the scope of the bankruptcy judge's power and the scope of the sale too narrowly. Because the sale has been completed, this court is without power to fashion a remedy; therefore, this case is moot.
 
 II.
 
 8
 The trustee was authorized to sell the Stadium under 11 U.S.C. Sec. 363(b), which is the primary authorization for a trustee to sell a debtor's property outside of the ordinary course of business. Good faith purchasers under Sec. 363 are protected from the reversal of a sale on appeal unless there is a stay pending appeal. 11 U.S.C. Sec. 363(m).[3]
 
 
 9
 It has been held that 11 U.S.C. Sec. 363(m)
 
 
 10
 reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids.... The finality and reliability of the judicial sales enhance the value of the assets sold in bankruptcy.
 
 
 11
 Tri-Cran, Inc. v. Fallon (In re Tri-Cran, Inc.), 98 B.R. 609, 617 (Bankr.D.Mass.1989) (citations omitted). See also In re Onouli-Kona Land Co., 846 F.2d 1170, 1172-73 (9th Cir.1988); In re Sax, 796 F.2d 994, 998 (7th Cir.1986). The effect of Sec. 363(m) is that "when an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal." Creditor Committee v. Armstrong Business Credit Corp. (In re Saco Local Development Corp.), 19 B.R. 119, 121 (BAP 1st Cir.1982). Absent a stay, the court must dismiss a pending appeal as moot because the court has no remedy that it can fashion even if it would have determined the issues differently. In re the Charter Co., 829 F.2d 1054 (11th Cir.1987) (per curium), cert. denied, 485 U.S. 1014, 108 S.Ct. 1488, 99 L.Ed.2d 715 (1988); Miami Center Partnership v. Bank of New York, 820 F.2d 376, corrected in part and rehearing denied, 826 F.2d 1010 (11th Cir.1987), vacating [826 F.2d 1010], reaffirming [820 F.2d 376] and rehearing denied, 838 F.2d 1547 (11th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988); In re Sax, 796 F.2d 994 (7th Cir.1986); International Union, U.A.W. v. Morse Tool, Inc. (In re MTI Holding Corp.), 85 B.R. 666, 668 (D.Mass.1988).
 
 
 12
 There are two complementary policies at work in Sec. 363 and the Bankruptcy Code cases. The first emphasizes the importance of encouraging finality in bankruptcy sales by protecting good faith purchasers and thereby increasing the value of the assets that are for sale. See, e.g., In re Onouli-Kona Land Co., 846 F.2d at 1172 ("the primary goal of the mootness rule is to protect the interest of a good faith purchaser ... of the property thereby assuring finality of sale." (quotation and citation omitted)); Greylock Glen Corp. v. Community Sav. Bank, 656 F.2d 1, 4 (1st Cir.1981); In re Sax, 796 F.2d at 998 (finality increases value). The second policy is broader and stresses a court's general jurisdictional bar from deciding cases in which it cannot provide a remedy. See, e.g., Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 132-33, 40 L.Ed. 293 (1895) (discussing generally court's impossibility of relief mootness policy); In re Cantwell, 639 F.2d 1050, 1053 (3d Cir.1981) ("generally, an appeal will be dismissed as moot when events occur during the pendency of an appeal [that] prevent the appellate court from granting any effective relief"). Both of these policies have existed in bankruptcy law long before the most recent code and are based in the caselaw as well as the statute. The two policies interact because the finality rule limits the remedies a court can offer. Miami Center, 820 F.2d at 379 (the rationale for dismissing as moot certain cases is that "a court cannot order relief without compromising the integrity of the sale of the property to a good faith purchaser.").
 
 III.
 
 13
 The effect of Sec. 363(m) on an appeal from a sale by the Trustee is common ground that the appellants do not explicitly attack.[4] Instead, they attempt to squeeze around the direct bar by distinguishing the sale motion from the related motions. But the facts of this case prohibit such a solution. The sale and the related motions were considered together and remain a package. The final bid for the Stadium by K Corp. was expressly conditioned upon certain approvals by the bankruptcy court including the two "related motions" at issue here: that the Patriots' sublease be transferred free of any claims or right of set-off and not be in default and that the advertising contract be rejected. These conditions were contained in the related motions and were made part of the judge's opinion approving the sale. Without having the court pass on those motions, it is unlikely that K Corp. would have proceeded with the sale. All of the motions were considered at the same time as the sale motion. They all affect aspects of the deal of which a purchaser would want to be certain prior to completing the purchase. In addition, appellants' arguments about the related motions implicate both of the policies that underlie Sec. 363 and bankruptcy law.
 
 
 14
 As other courts have noted, the policies of finality and necessity of fashioning effective remedies in bankruptcy law pervade the Code and are not strictly limited to Sec. 363. See, e.g., In re Highway Truck Drivers & Helpers Local 107, 888 F.2d 293, 297 (3d Cir.1989) (discussing cases in other circuits); Id. at 298 ("We believe these authorities clearly illustrate that, in addition to those situations covered under [Sec. 363(m) ] ... a myriad of circumstances can occur that would necessitate the grant of a stay pending appeal in order to preserve a party's position."); In re Onouli-Kona Land Co., 846 F.2d at 1172 ("we have emphasized the 'particular need' for finality in bankruptcy"); Miami Center, 838 F.2d at 1553 ("The Eleventh Circuit, like other circuits, has recognized the continuing viability and applicability of the mootness standard in situations other than transfers by a trustee under Sec. 363(b) or (c)") (citations omitted); In re Roberts Farms, Inc., 652 F.2d 793, 798 (9th Cir.1981); In re Tri-Cran, 98 B.R. at 618 ("even if section 363(m) does not itself apply to the Trustee's cause of action, the policy and the rule it states must be respected").
 
 
 15
 The Patriots argue that they are not attacking the sale itself but rather the assignment of a lease under 11 U.S.C. Sec. 365, a provision of the Code that does not explicitly contain the same finality provisions as the sale of property. But that
 
 
 16
 misses the point. Section 363(m) does not say that the sale must be proper under Sec. 363(b); it says that the sale must be authorized under Sec. 363(b). There is no doubt that when the bankruptcy court authorized the sale and ordered the [the property] turned over to the purchaser, it was acting under Sec. 363(b). At this juncture, it matters not whether the authorization was correct or incorrect. The point is that proper procedures must be followed to challenge a bankruptcy sale authorized under Sec. 363(b).
 
 
 17
 In re Sax, 796 F.2d 994, 997-98 (7th Cir.1986) (footnote omitted) (emphasis in original). The sublease is one of the most valuable elements of the sale. Both the final bid and common sense dictate that without the sublease K Corp. would not have submitted the same bid for the Stadium. Given the importance of the sublease to the sale of the stadium, the assumption and assignment of the sublease was integral to the restructuring of debtor-creditor relations. It was thus within the bankruptcy court's power to determine the claims of the parties with respect to the sublease so that a prospective purchaser would know what he was getting. This increased the value of the stadium and benefits all creditors. Thus, the assignment of the sublease was integral to the sale and removing it from the sale would have adversely affected the terms of the sale.
 
 
 18
 Similarly, A-B argues that the only relief it is seeking is a "stay put" provision that would allow it to keep its advertising in the Stadium. Thus, it argues that we can fashion appropriate relief without unravelling the sale. But such relief would change the deal that the purchaser made. It can fairly be inferred that K Corp. intended to sell the advertising space and made its bid based on that assumption.
 
 
 19
 Both appellants argue that the relief they seek will not unravel the sale and thus would not implicate the policy of finality and protection of good faith purchasers because the final bid made provisions for price adjustments. But they ignore the terms of the bid. It specifically gave K Corp. the right to terminate its bid if significant adjustments were made in what it was purchasing.[5] Such a termination would obviously result in an unravelling of the sale. It is axiomatic that "one cannot challenge a central element of a purchase ... without challenging the validity of the sale itself. We fail to see how this court could order a ... refund to purchaser without affecting the validity of the sale." Charter Co., 829 F.2d at 1056.
 
 
 20
 Appellants other arguments against mootness are also of no avail. The sale was completed because the appellants failed to request a stay pending appeal. We are powerless to undo the sale.
 
 
 21
 For the foregoing reasons, the appeals are dismissed.
 
 ORDER OF COURT
 
 22
 The motions to supplement the record are denied; they come too late. Moreover, even if the documents were incorporated into the record, it would not change the result in this case. "For whatever reasons K Corp. chose to waive"[1] a condition of its bid (with the approval of the bankruptcy court) is irrelevant to our analysis. Counsel failed, upon proper notice, to request a stay of the sale of the stadium. That tactical decision sealed their fate when the sale went forward.
 
 
 23
 In addition, K Corp. did not receive a "windfall" as the appellants claim. K Corp. bargained away protection that it had been guaranteed and took a calculated risk. Their risk was properly calculated.
 
 
 24
 The petitions for rehearing are denied.
 
 
 
 *
 Of the Second Circuit, sitting by designation
 
 
 [1]
 At that time, both the Stadium and the Patriots were controlled by the Sullivan family and shared many directors. The debtor was created by Charles W. Sullivan, the Executive Vice-President and a director of the Patriots Corporation and the son of William H. Sullivan, Jr., the principal owner of the team. The close connection between the two entities makes the factual and interpretive aspects of this case particularly difficult because there is at least a question whether the intercompany transactions were at arms length. For example, the bankruptcy court found that the two entities shared a chief financial officer. Because of this close connection it is difficult to get an accurate determination of intention or past practice
 On November 7, 1988, the Patriots and related assets (including the Patriot sublease) were purchased by KMS Patriots L.P., (Patriots), a limited partnership consisting of Victor K. Kaim (through VKK Corp.), Francis W. Murray and William H. Sullivan, Jr.
 
 
 [2]
 The Patriots are concerned that the parcel of land that surrounds the Stadium, and provides most of the access to the stadium, could become unavailable for their use because it is now owned by another corporation
 
 
 [3]
 Section 363(m) provides:
 the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
 
 
 [4]
 The Patriots do argue that K Corp does not enjoy the protection of Sec. 363(m) because it was not a good faith purchaser of the Stadium. Although recognizing that the bankruptcy court made a specific finding that K Corp. was a good faith purchaser, the Patriots claim that K Corp. did not comply with the condition in its bid that all appeals be completed before the deal closed. The Patriots argue that by closing prior to this appeal, K Corp. was not acting in good faith because it hoped to gain the protection of the Code and thus took the risk of reversal
 But the Patriots read the conditions of the final bid too broadly. As we read the final bid, the appeal upon which the bid was conditioned was from the sale motion. As the Patriots concede, (and in fact try to use to their advantage elsewhere), they are not appealing from the sale. K Corp. waited until the appeals from the sale were final before closing. Our reading is supported by the bid's specific reference to the injunction or stay in Sec. 5(g) which would only be applicable to the sale. In addition, as Sec. 363 makes clear, it is not knowledge of appeals that is the issue. The important issue is whether the sale was ever stayed pending appeal. The Patriots never sought such a stay.
 Finally, this case is not one in which the purchaser expressly conditioned the purchase on the outcome of future appeals. Cf. In re Victoria Station, 88 B.R. 231, 234-35 (9th Cir BAP 1988), aff'd, 840 F.2d 682 (9th Cir.1988).
 
 
 [5]
 We assume that an adequate remedy to either party would result in a "loss" of income to K Corp. that would trigger that portion of Sec. 4 of the bid that gave K Corp. the option of walking away from the deal if the trustee was unable to deliver the property as specified. In particular, the bid contained an Economic Loss Limit of $500,000. Any adjustments above that amount, even if K Corp. could get a refund, gave K Corp. the option of terminating the deal
 
 
 [1]
 These are the artfully chosen words of KMS Patriots' Reply Brief at page 7, where counsel, if they thought it relevant at the time, should have mentioned the supplemental material to this court