March 4, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1976

OAKVILLE DEVELOPMENT CORPORATION,
TRUSTEE OF THE 10-12 LOPEZ ST. TRUST,

Plaintiff, Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Walter Jay Skinner, U.S. District Judge]

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.

David Hoicka, with whom Hoicka & Associates, P.C. was on

brief, for appellant.
Edward J. O'Meara, Staff Counsel, FDIC, with whom Ann S.

DuRoss, Assistant General Counsel, Richard J. Osterman, Jr.,

Senior Counsel, John Houlihan, Sarianna T. Honkola, and Edwards &

Angell were on brief, for appellee.

March 4, 1993

SELYA, Circuit Judge. Plaintiff-appellant Oakville
SELYA, Circuit Judge.

Development Corporation (Oakville) challenges orders issued by

two different district judges which had the combined effect of

allowing a foreclosure sale to proceed. For the reasons that

follow, we dismiss Oakville's appeal as moot.

I

Oakville borrowed $78,000 from First American Bank.

The loan was evidenced by a promissory note and secured by a

second mortgage on a parcel of real property located at 10-12

Lopez Street, Cambridge, Massachusetts. On October 19, 1990, the

bank was declared insolvent and the Federal Deposit Insurance

Corporation (FDIC) was appointed as receiver. Oakville's loan

appeared on the bank's books as an asset.

The FDIC published notice to First American's

creditors, setting a 90-day deadline for the filing of claims.

Because Oakville was mired in a dispute with First American

regarding the aforementioned loan, it filed a proof of claim.

The FDIC rejected Oakville's claim as untimely and refused to

entertain administrative appeals. Oakville did not seek judicial

review within the time allotted. See 12 U.S.C. 1821(d)(6)(A)

(1988). Some months later, however, Oakville sued in state court

based on First American's alleged failure to accept and credit

payments on the loan. The FDIC removed the case to federal court

and moved for dismissal. The FDIC's motion remains undecided.

Because Oakville's payments were substantially in

arrears, the FDIC also embarked on foreclosure proceedings. It

2

scheduled a foreclosure sale for May 20, 1992. On May 15,

Oakville moved to enjoin the proposed sale. On May 19, the

district court (Skinner, U.S.D.J.) issued a temporary restraining

order (TRO) stalling the sale. Oakville subsequently failed to

submit documents and appear at a hearing. Accordingly, Judge

Skinner dissolved the TRO on July 13, 1992.

The FDIC readvertised the foreclosure sale, this time

stipulating a date of August 12, 1992. Oakville filed an

emergency motion to reinstate the TRO.1 The district court

(Wolf, U.S.D.J.) denied the motion, determining that the court

lacked statutory authority to grant an injunction against the

FDIC qua receiver. See 18 U.S.C. 1821(j) (1988). Oakville

took an appeal but did not request a stay of the impending sale

(although counsel claims that he circulated notices at the

auction, warning prospective bidders that an appeal was pending).

The property was sold to a third party and has since changed

hands.

II

It is important to stress that Oakville takes this

appeal strictly and solely from two interlocutory orders of the

district court: Judge Skinner's order dissolving the TRO and

Judge Wolf's order refusing to reinstate the injunction (and,

thus, allowing the foreclosure sale to proceed). Hence, the

merits are not before us and Oakville's action remains pending

1The motion was filed on August 11, 1992. Judge Skinner was
on vacation. In his absence, Judge Wolf presided.

3

below. Seen in this light, it is readily apparent that, since

the foreclosure sale has now taken place and title to the

property rests with a third party, reversing the orders in

question would give Oakville no more than a moral victory. Ergo,

its appeal is moot.

Article III of the Constitution confines the federal

courts' jurisdiction to those claims which embody an actual

"case" or "controversy." U.S. Const. art. III, 2, cl. 1. It

is well established that, in circumstances where a court cannot

provide effectual relief, no justiciable case remains and the

court must dismiss the appeal as moot. See Mills v. Green, 159

U.S. 651, 653 (1895). This doctrine applies with full force and

effect where, as here, a plaintiff appeals from the dissolution

of an injunction or the denial of injunctive relief, but neglects

to obtain a stay. When, as will often happen, the act sought to

be enjoined actually transpires, the court may thereafter be

unable to fashion a meaningful anodyne. In such straitened

circumstances, the appeal becomes moot. See, e.g., In re Stadium

Management Corp., 895 F.2d 845, 847 (1st Cir. 1990) (holding, in

analogous circumstances, that "[a]bsent a stay, the court must

dismiss a pending appeal as moot because the court has no

remedy"); In re Continental Mortgage Investors, 578 F.2d 872, 877

(1st Cir. 1978) (explaining that "[a]n appeal is considered moot

if it cannot affect the matter in issue or cannot grant effectual

relief"); see also Railway Labor Executives Ass'n v. Chesapeake

W. Ry., 915 F.2d 116, 118 (4th Cir. 1990), cert. denied, 111 S.

4

Ct. 1312 (1991); In re Kahihikolo, 807 F.2d 1540, 1542 (11th Cir.

1987) (per curiam); Holloway v. United States, 789 F.2d 1372,

1374 (9th Cir. 1986); In re Combined Metals Reduction Co., 557

F.2d 179, 189 (9th Cir. 1977); In re Information Dialogues, Inc.,

662 F.2d 475, 476 (8th Cir. 1981); In re Cantwell, 639 F.2d 1050,

1053-54 (3d Cir. 1981).

III

Appellant offers three counter arguments in an effort

to ward off the inevitable. We consider them seriatim.

A

Oakville contends that we can grant effective relief

even at this late date. Its contention assumes that the sale can

be voided because prospective purchasers were notified of

Oakville's pending appeal.2 Oakville's premise is wrong.

Oakville furnishes no authority to contradict the black

letter law that a sale to a good faith purchaser cannot be

rescinded in these circumstances. See, e.g., Mass. Gen. L. Ann.

ch. 106, 2-702 (West 1990) (explaining that a seller's right to

reclaim goods is subject to the rights of a good faith

purchaser). Generally speaking, a good faith purchaser is one

who purchases assets for value, without fraud, misconduct, or

knowledge of adverse claims. In re Bel Air Assocs., Ltd., 706

F.2d 301, 304-05 (10th Cir. 1983); Greylock Glen Corp. v.

2We address this argument even though the record does not
contain a copy of the supposed notice or any other specific
information as to its contents or as to the manner in which it
was distributed.

5

Community Sav. Bank, 656 F.2d 1, 3-4 (1st Cir. 1981). Knowledge

of a pending appeal, without more, does not deprive a purchaser

of good faith status. Put another way, claims asserted in such

an appeal are not "adverse claims" within the meaning of the

rule. See Greylock Glen, 656 F.2d at 4 (holding that a bank,

although a party to a pending appeal, was nonetheless a good

faith purchaser); In re Dutch Inn of Orlando, Ltd., 614 F.2d 504,

506 (5th Cir. 1980) (holding that a third-party purchaser's

knowledge of claims asserted in a pending appeal did not deprive

the purchaser of good faith protection); see also Stadium

Management, 895 F.2d at 848 n. 4; cf. 11 U.S.C. 363(m) (an

appeal of the authorization to hold a bankruptcy sale does not

affect the good faith status of an ensuing transaction). Thus,

Oakville takes nothing simply by reason of having told likely

bidders about its pending appeal.

B

Oakville's second basis for claiming that we could

still grant effective relief is predicated on the notion that,

under Massachusetts law, it has a right to redeem the foreclosed

property.3 Thus, its thesis runs, the appeal is alive because an

affirmative exercise of redemptive rights will unravel the sale.

The infertility of this theory is starkly apparent.

As previously remarked, Oakville appeals only the

3Whether Oakville has such a right is far from pellucid. In
general, Massachusetts law does not provide a right of redemption
where the "land has been sold pursuant to a power of sale
contained in the mortgage deed," Mass. Gen. L. Ann. ch. 244,
18 (West 1988), as would appear to be the case here.

6

dissolution of the TRO and the district court's subsequent

refusal to reinstate it. But, redemption assumes a completed

foreclosure not a stalled sale. Thus, whatever state-law right

of redemption Oakville might have is independent of the merits of

the challenged orders. Indeed, it is the lifting of the TRO and

the consequent happening of the foreclosure that allows Oakville

to pursue its claimed redemptive remedies. What is more, our

contemplation of whatever as-yet-unexercised redemptive right

Oakville may enjoy would contravene Article III's prohibition

against advisory opinions. See Holloway, 789 F.2d at 1374

(refusing to reach merits of redemption argument where purchaser

of property was not a party because to do so would be "an

advisory opinion upon a moot question") (citations omitted).

C

Appellant also argues that its appeal skirts the

jurisdictional bar because the question presented is "capable of

repetition, yet evading review." Southern Pac. Terminal Co. v.

ICC, 219 U.S. 498, 515 (1911). Although this asseveration

fastens upon a recognized exception to general principles of

mootness, see, e.g., Caroline T. v. Hudson Sch. Dist., 915 F.2d

752, 757 (1st Cir. 1990); In re Grand Jury Proceedings, 814 F.2d

61, 68 (1st Cir. 1987); Anderson v. Cryovac, Inc., 805 F.2d 1, 4-

5 (1st Cir. 1986), the exception is not a juju, capable of

dispelling mootness by mere invocation. Rather, the exception

applies only if there is "a 'reasonable expectation' or a

'demonstrated probability' that the same controversy will recur

7

involving the same complaining party." Murphy v. Hunt, 455 U.S.

478, 482 (1982) (quoting Weinstein v. Bradford, 423 U.S. 147, 149

(1975)).

Appellant's case does not come within the margins of

this definition. Unlike pregnant women, who are likely to

conceive again, see Roe v. Wade, 410 U.S. 113, 125 (1973), or

handicapped children, who are likely to require placement in

subsequent school years, see Honig v. Doe, 484 U.S. 305, 317-23

(1988), it is highly unlikely that appellant will again secure a

mortgage with a federally insured bank that then fails, prompting

FDIC involvement and ensuing foreclosure.4 Appellant has not

shown, or even alleged, that it has the slightest prospect of

suffering this fate anew. Instead, appellant contends that the

FDIC's arbitrariness will imperil other property owners. But,

even if this contention is true, it is irrelevant: the

possibility or even the probability that others may be called

upon to litigate similar claims does not save a particular

plaintiff's case from mootness. See Lane v. Williams, 455 U.S.

624, 634 (1982); Pallazola v. Rucker, 797 F.2d 1116, 1129 (1st

Cir. 1986). Thus, appellant cannot bring its case within the

narrow confines of the "capable of repetition, yet evading

review" exception.

IV

While most of appellant's claims against the FDIC

4The record in this case does not show that appellant owns
any other property, has any other mortgage loans, or retains any
borrowing power.

8

remain to be litigated below, its claims pertinent to injunctive

relief became moot when the property was sold at auction.

Although the transgressions of the FDIC may be a tempting subject

for soliloquy, for us to pronounce judgment in the absence of any

effective remedy would be to wander impermissibly into the realm

of the advisory and

the hypothetical. Because jurisdictional concerns prevent this

court from rendering judgment where no relief is legally

possible, we must go no further.5

The appeal is dismissed as moot. Costs to appellee.
The appeal is dismissed as moot Costs to appellee

5The FDIC has asked that we order appellant to pay
attorneys' fees and double costs. While the question is not free
from doubt, we decline, on balance, to impose sanctions. We do,
however, award the FDIC its ordinary costs.

9