COMCO ASSOCIATES and SPA 77k L.P., Plaintiffs,

v.

FARALDI FOOD INDUSTRIES LTD., et al., Defendants.

COMCO ASSOCIATES, Plaintiff,

v.

FARALDI FOOD INDUSTRIES LTD., et al., Defendants.

COMCO ASSOCIATES, Plaintiff,

v.

FARALDI FOOD INDUSTRIES LTD., et al., Defendants.

COMCO ASSOCIATES, Plaintiff,

v.

STAD MEAT CORPORATION, Defendant.

COMCO ASSOCIATES, Plaintiff,

v.

STAD MEAT CORPORATION, Defendant.

Nos. CV 93–2608, CV 93–2656, CV 93–3751, CV 93–5203 and CV 93–5204.

United States District Court, E.D. New York.

Aug. 5, 1994.

Laurence May, Angel & Frankel, P.C., New York City, for Faraldi Food Industries, LTD.

Stephan B. Gleich, Stephan B. Gleich & Associates, Great Neck, NY, for Comco Associates and SPA.

William S. Kaye, New York City, for Creditors' Committee.

Hahn & Hessen by David Blejwas, New York City, for Secured Lender.

Ross & Hardies by Philip Guarino, New York City, for White Rose.

Finkel, Goldstein, Berstow & Rosenbloom by Neil Rosenbloom, New York City, for Stad Meat Corp.

DeSena & Kafer, New York City.

Jaspan, Ginsberg, Erlich, Schlessinger, Silverman and Hoffman by Kenneth G. Silverman, Garden City, NY.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Faraldi Foods, Inc. ("Faraldi" or "debtor"),[1] debtor in the above-referenced bankruptcy action, leased property in a shopping center from Comco Associates ("Comco"). After receiving three extensions from the bankruptcy court with respect to its time to either assume or reject the lease, Faraldi decided to assume the lease. Thereafter, Faraldi also sought permission from the bankruptcy court to sell its assets and assign its leases, including the Comco lease, to Stad Meats, Corp. ("Stad"), a good faith purchaser. The bankruptcy court authorized the sale and assignments.

Comco separately appealed the last two extension orders and the terms of the assignment and on September 29, 1993, this Court ordered the consolidation of these three appeals. Comco did not seek to stay the sale or assignment pending this appeal and for the last year Stad has been operating a meat store on the leased premises. Presently before the Court is a motion by Faraldi's Chapter 7 trustee (the "trustee") and the Bank of Tokyo Trust ("BOTT"), Faraldi's largest secured creditor, to dismiss the appeals as moot. Because Comco did not seek a stay pending appeal, the motion to dismiss the appeal is granted.

Additionally, pending before the bankruptcy court are two adversary proceedings initiated by Stad against Comco seeking to enjoin Comco from terminating its lease with Stad. In addition to its appeal, Comco moves, pursuant to 28 U.S.C. § 157(d), to withdraw the bankruptcy reference with respect to those

---

1. Faraldi and its various affiliates are the debtors in this bankruptcy action. For simplicity's sake, however, this Court will refer to Faraldi as the debtor in this action.

adversary proceedings. For the reasons stated below, this motion is denied.

## I. *BACKGROUND*

Faraldi leased certain non-residential property in Commack, New York from Comco. Faraldi ran a meat market on the leased premises. On October 28, 1992, Faraldi filed for bankruptcy. On December 4, 1992, Faraldi filed an application with the bankruptcy court for an order extending its time to assume or reject the lease. The bankruptcy court granted this application.

Thereafter, at the request of the debtor and over the landlord's objection, the bankruptcy court granted two further extensions of the debtor's time to assume or reject the lease. Comco appealed these two extension orders to this Court. On May 21, 1993, before this Court ruled on Comco's pending appeals, and upon Faraldi's application and over Comco's objection, the bankruptcy court entered an order (the "Sale Order") authorizing *inter alia,* the assumption and assignment of the lease pursuant to § 365 of the Code and the sale of Faraldi's interest in the store pursuant to §§ 363(b) and (f) of the Code to Stad, a good faith purchaser.[2] Comco appealed the Sale Order on or about June 30, 1993. Comco did not seek to stay the assignment or sale prior to bringing this appeal. On September 28, 1993, this Court ordered the consolidation of these three appeals.

**2.** The assignment of this particular lease was merely one aspect of a larger asset sale entered into between the debtor and Stad Meats. In fact, under the Sale Order, Stad Meats acquired from the debtor two other leases, personalty in certain of the debtor's stores, equipment, the debtor's trademark, and certain of the debtor's other rights. Stad paid $1.7 million for all these assets.

**3.** The Sale Order provided for the mortgaging of the lease to BOTT. Comco argues that Article 8.08 of the lease prohibits such a leasehold mortgage. Additionally, the lease requires the consent of the shopping center mortgagee to any assignment or sublease. Such consent was never sought or obtained.

It should be noted, that despite Article 8.08, BOTT held a leasehold mortgage in the lease even before Faraldi filed for bankruptcy.

## II. *Discussion*

### A. *The Consolidated Appeals Must Be Dismissed As Moot*

Comco argues that the second and third extension orders were improper because Faraldi did not show good cause for the extensions. Comco further argues that the Sale Order impermissibly· approved the assumption and assignment of the lease by abrogating or modifying certain enforceable lease provisions.[3] Additionally, Comco contends that the Sale Order was improper because it failed to require the cure of all lease defaults or adequate assurance that such defects would be promptly cured before authorizing the assumption and assignment. Despite these alleged errors, Comco never sought to stay either the assignment or the sale pending appeal and Stad is now operating a meat store on the premises.

Consequently, the trustee and BOTT (the "movants" or "moving parties"), contend that this appeal is moot and move to dismiss it. They argue that Comco should have sought a stay of the Sale Order pending its appeal and that absent such a stay, a consummated sale or assignment to a good faith purchaser or assignee cannot be undone.[4] The movants argue that the assumption and assignment is inextricably linked to the sale and thus cannot be set aside without undoing the sale. Additionally, the movants argue that a court cannot undo a consummated assignment even when such an assignment is independent of a § 363 sale.

**4.** Section 363 of the Code governs the use, sale or lease of property. Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).

Section 365 of the Code governs the assumption and assignments of executory contracts such as the lease in question. Nothing in this section explicitly requires that a party seek a stay of any order arising under this section pending appeal.

Because this Court cannot unravel the sale or the assignment, the movants argue that the Court cannot provide a remedy for any alleged error committed by the bankruptcy court in granting the two extension orders [5] or in authorizing the assumption and assignment of the lease in the form that it did. Finally, the Trustee and BOTT argue that when an appellate court cannot provide a remedy, it must dismiss an appeal as moot.

According to Comco, no provision of the Bankruptcy Code obligated it to seek a stay of the assumption and assignment order pending its appeal.[6] Thus, Comco argues that there is nothing to prevent this Court from undoing the assumption and assignment if this Court was to find error with any of the bankruptcy court's orders flowing from the assumption and assignment. Accordingly, Comco argues that this Court can provide a remedy for the challenged orders and thus this appeal is not moot.

Moreover, Comco argues that, in any event, it is not seeking to undo the sale or to challenge the consummated assignment. Rather, Comco urges that its challenge is more narrowly drawn. It is seeking review only of the bankruptcy court's authority (1) to grant extensions in the absence of good cause; (2) to modify or abrogate certain provisions in a shopping center lease; and (3) to affirm an assignment without first requiring that all defaults be cured or requiring adequate assurances of future performance.

There is no controlling Supreme Court or Second Circuit case to guide this Court. Other courts, however, have had the opportunity to analyze when an appellant must seek a stay in the context of assignments and sales. Courts that have examined the issue have held that a consummated assignment cannot be undone and any appeal arising from such an assignment must be dismissed as moot.[7] This is not to say, however, that these courts have arrived at the same result following the same path. Rather, a review of the cases suggests three different routes to the same destination.

The first approach was set forth in *In re Stadium Management,* 895 F.2d 845 (1st Cir. 1990). In that case, the debtor owned Sullivan Stadium, the home playing field of the New England Patriots. The debtor leased the land on which the stadium was situated. The trustee moved in the bankruptcy court for approval to sell the stadium and its other assets to a good faith purchaser. At the same time, the debtor filed related motions seeking (1) approval of the assumption and assignment of the lease to the same purchaser and (2) approval of the trustee's decision to reject an advertising contract that the debtor had entered into with the Annheuser–Busch company. In one order, the bankruptcy court approved both the sale of all of the debtor's assets and the two related motions. The lessor and Annheuser–Busch appealed the related motions, but did not seek to stay the sale pending their appeal.

The *Stadium Management* court, finding that both the assignment of the lease and the rejection of the advertising contract were integral aspects of the sale, held that § 363(m) of the Code rendered the appeal moot because no stay had been requested or entered. According to the First Circuit, to undo either the assignment or rejection would undermine the validity of the consummated sale,[8] a result forbidden by the Code.

In *In re Exennium, Inc.,* 715 F.2d 1401 (9th Cir.1983), the court took a somewhat different approach to this issue. In that case, the trustee held a sale in which certain

**5.** Additionally, the moving parties suggest that this Court cannot reverse the extension orders without undoing the assumption and assignment. The consequence of reversing the extensions is that Faraldi should be deemed to have rejected the lease in question. This, according to the movants, would necessarily result in the unraveling of the consummated assignment and sale.

**6.** As noted above, unlike § 363, § 365 does not explicitly require that a party seek a stay pending appeal.

**7.** Indeed, this Court has found no case where a consummated assignment was vitiated on appeal.

**8.** The court found that "the sale and the related motions were considered together and remain a package. The final bid for the Stadium by [the good faith purchaser] was expressly conditioned upon certain approvals by the bankruptcy court including the two 'related motions' at issue here." *In re Stadium Management,* 895 F.2d at 848.

leases and personal property of the debtor were offered to the public. A third party purchased the leases and the personal property. When that party informed the lessor of the sale, the lessor "moved [in the bankruptcy court] to reopen the *sale of its lease* on the grounds of defective notice." *Id.* at 1402. (emphasis added). The trustee, in turn, moved for an order permitting the assignment of the leases. The bankruptcy court authorized the trustee to complete the sale and assign the leases. The lessor appealed the sale and assignment but did not seek a stay pending appeal.

The Ninth Circuit found that § 363(m) mooted the appeal because the lessor failed to seek a stay pending the appeal. Although somewhat unclear, the *Exennium* court seemed to find that § 363 applied to the assignment, because of its view that the assignment was merely a type of sale, *i.e.*, a sale of a lease.[9] Thus, the *Exennium* court did not enter into any analysis of whether the assignment at issue was integrally related to the sale, such that the unravelling of the assignment would have the effect of undoing the sale. *See also In re Chateaugay Corp.*, 1993 WL 159969, 1993 U.S.Dist. LEXIS 6130 (S.D.N.Y.).

Finally, in *In re Joshua Slocum*, 922 F.2d 1081 (3d Cir.1990), a third approach to this issue was laid out. In that case, the debtor tenant had a lease which contained both a percentage rent clause and an average sales clause. A portion of the rent was calculated based on the percentage of sales made with the proviso that if the average sales dropped below a certain point, either the landlord or tenant could terminate the lease.

The trustee moved in the bankruptcy court to assume and assign the lease to a third party. The bankruptcy court granted the motion and at the same time held that the average sales clause was unenforceable and excised it from the lease. Without seeking a stay of the assignment, the landlord, on appeal, challenged the bankruptcy court's authority to excise the clause.

Like the movants herein, the trustee in the *Slocum* case, moved to dismiss the appeal as moot. However, the *Slocum* court held that the appeal was not moot because the appellants were not actually challenging the assignment itself but only the more narrow issue of whether the bankruptcy court had the authority to excise the lease provision. The *Slocum* court concluded that it was mere conjecture to assume that the assignment would be undone if it reversed the bankruptcy court and ordered the clause reinstated.[10] The court suggested, however, that if it believed that its action would have the effect of undoing the assignment it would have dismissed the appeal as moot because no stay had been entered pending appeal.[11] *Id.* 922 F.2d at 1086 n. 2.

9. Even though assignments of executory contracts are governed by § 365 and not by the more general § 363 sales provision, assignments are in fact just a type of sale. Instead of purchasing or leasing property, transactions governed by § 363, an assignee purchases a lease. A good faith assignee, therefore, stands in the same shoes as a good faith purchaser and as an innocent third party depends on the finality of bankruptcy orders to the same extent as good faith purchasers. Accordingly, any order undoing a consummated assignment would have the effect of "annul[ing] a transaction ... involv[ing] an entity over which [the court] do[es] not have jurisdiction." *In re Joshua Slocum*, 922 F.2d 1081, 1094 (3d Cir.1990) (Sloviter, J., dissenting).

10. The dissent in *Joshua Slocum* argued convincingly that the panel erred by concluding that the reinstatement of the average sales clause would not be tantamount to undoing an already consummated assignment. The dissent stated that the panel's "decision will undeniably have the

effect of fundamentally changing the terms of the assignment and thereby effectively rescinding it. The assignee relied of the excision of [the clause] just as it relied on the assignment of the lease in general." *Joshua Slocum*, 922 F.2d at 1094. Thus, the dissent argued that the panel, in effect, vitiated on appeal a consummated assignment to a good faith purchaser, a result that the dissent felt was at odds with established law.

11. In fact, the district court in *In re Delaware & Hudson Ry., Co.*, 129 B.R. 388 (Bankr.D.Del. 1991), dismissed an appeal as moot on this very ground. The district court stated, "although *Slocum* rejects the *Stadium Management* approach of stretching § 363(m) to moot an appeal of an assumption and assignment under § 365, *Slocum* indicates that general mootness principles may apply to moot an appeal of a § 365 order." *Id.* at 394. The *Delaware & Hudson* court held that the appeal was moot despite the appellant's assertion that it was only challenging the propriety of the assumption and not the assignment. Recognizing that assumption "necessarily pre-

The majority in *Slocum* indicated that it agreed with the dissent's "well-reasoned analysis" which concluded that

> well-established rules of justiciability found in the cases of this court and others, along with the particular need of finality in bankruptcy, require that we find the appeal of a completed lease assignment to a non-party moot unless the appellant has sought a stay pending appeal.

*Id.* at 1093.

The dissent noted a variety of instances in both the bankruptcy and non-bankruptcy contexts, where appeals had been dismissed as moot because of the failure to stay the challenged event pending appeal. *See e.g., Central States Pension Fund v. Central Transp., Inc.,* 841 F.2d 92 (4th Cir.1988) ("where an appeal of a reorganization plan was held to be moot because the plan had been substantially implemented and thus reversal 'would require undoing transactions involving third parties, not participants in this litigation.'" (*Slocum,* 922 F.2d at 1094 (quoting *Central Pension Fund,* 841 F.2d at 96))); *Miami Center Ltd. Partnership v. Bank of New York,* 838 F.2d 1547 (11th Cir.1988) (appeal from confirmation of a liquidation plan dismissed as moot because the plan was not stayed pending appeal); *Brill v. General Indus. Enter.,* 234 F.2d 465 (3d Cir. 1956) (shareholders' appeal of denial of motion to enjoin the sale of corporation's asset dismissed as moot where no stay was sought and the sale consummated prior to appeal).

Thus, although the dissent refused to extend § 363(m) to assignments, it reasoned that the policies underlying the stay requirement in the § 363 context apply equally to transactions under § 365.[12] Accordingly, the dissent found that despite the absence of language in § 365 explicitly requiring a stay, a consummated assignment pursuant to § 365 cannot be undone and any appeal from an order authorizing such an assignment must be dismissed as moot.

■ Finding merit with the dissent's "well-reasoned analysis," this Court holds that any appeal of a consummated assignment pursuant to § 365 must be dismissed as moot. This Court recognizes that under any of the above-mentioned approaches, the same result must obtain. Nevertheless, this Court feels constrained to explain briefly its belief that the *Slocum* method is the superior one.

Under the *Stadium Management* approach, § 363(m) is extended to assignments when the assignment is inextricably linked to a § 363 sale. Besides stretching the plain language of § 363, this approach does not account for those situations where there is an assignment without a sale. Additionally, the *Exennium* approach, while avoiding this limitation, is simply not consonant with the statutory scheme. Although an assignment is assuredly a species of sale, there is no escaping that the Code has distinct provisions for sales and leases on the one hand and assignments on the other.

■ Finally, this Court finds Comco's argument that it is not seeking the reversal of the assignment to be without merit. As noted earlier, this Court cannot reverse the granting of the two extension orders without totally invalidating the assignment. Additionally, like the dissent in *Slocum,* this Court recognizes that to change the terms of the assignment at this time, by reinserting or enforcing certain of the lease provisions or by requiring other monetary payments that Comco argues are due it under the Code, would go straight to the heart of the assumption that it would receive exactly what the bankruptcy court ordered. This Court cannot now change the terms of that transaction without throwing into question the validity of the entire transaction. Accordingly, Comco's appeal must be dismissed as moot.

---

cedes assignment," the district court rejected the appellant's contention and concluded that the appellant should have sought a stay of the assignment pending appeal.

12. As the dissent in *Slocum* noted, the premise of the stay requirement in § 363 " 'reflects the salutary policy of affording finality to judgments approving sales in bankruptcy by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids.... The finality and reliability of judicial sales enhance the value of the assets sold in bankruptcy.'" *Slocum,* 922 F.2d at 1095, (quoting *In re Stadium Management Corp.,* 895 F.2d at 847).

## B. *Withdrawal Of The Bankruptcy Reference Is Not Warranted*

Pursuant to the Sale Order, Stad Meats was obligated to begin paying rent to Comco on August 1, 1993. On or about August 2, 1993, Stad tendered payment to Comco. On or about August 25, 1993, that payment was returned to Stad. At that time, Comco informed Stad that it could not accept partial payment from Stad without a reservation of rights. In addition to the current rent, Comco demanded that Stad pay the past due rent.

On August 26, 1993, Stad informed Comco that by the terms of the Sale Order, any outstanding rent charges that accrued before August 1, 1993, would be paid to Comco from the debtor's estate. Subsequently, on August 27, 1993, Comco sent Stad a Notice of Default which indicated that if the defaults alleged were not cured within 10 days, Comco would elect to terminate the lease.

Comco alleged that Stad was in default under the lease because Stad had not installed a sprinkler system or modified the plumbing system. The Sale Order, however, indicates that Comco cannot be held liable for any default caused by Faraldi. Fearing that Comco would seek to terminate the lease, Stad sought and obtained injunctive relief from both the state court and obtained injunctive relief from both the state court and bankruptcy court. Additionally, it began an adversary proceeding in the bankruptcy court to resolve the dispute.[13]

■ Comco argues that this Court should withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) because its dispute with Stad is an ordinary garden-variety breach of contract action, and as such must be characterized as a non-core proceeding. Additionally, Comco argues that it is entitled to a jury trial on this issue and that the bankruptcy court lacks jurisdiction to oversee such a trial. Finally, Comco urges the this Court to abstain from hearing the matter and allow a state court to preside over the proceeding.

28 U.S.C. § 157(d) provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.

In *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993), the Second Circuit set forth various factors a district court should consider when determining whether there is "cause" to withdraw a bankruptcy reference. The court should consider "whether the claim or proceeding is core or non-core, whether it is legal or equitable, ... efficiency, prevention of forum shopping, and the uniformity in the administration of bankruptcy law."

In *Orion*, the Second Circuit emphasized the centrality of the core/non-core distinction when determining whether to withdraw a reference. It stated:

A district court considering whether to withdraw a reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn. For example, the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court. Conversely, hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues. Thus, once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping and other related factors.

■ Section 157(b)(2) of the Code sets forth a nonexhaustive list of core proceedings. As a general matter, a core proceeding

---

**13.** Stad thereafter removed its state action to the bankruptcy court where it was consolidated with its original adversary proceeding.

is one "which govern[s] the administration of the debtor's estate," *In re Braniff Int'l Airlines, Inc.,* 159 B.R. 117, 125 (E.D.N.Y.1993), and is "integral to the core bankruptcy function of restructuring debtor-creditor rights." *In re Arnold Print Works, Inc.,* 815 F.2d 165, 166 (1st Cir.1987) (quoting 130 Cong. Rec. E1109 (daily ed. March 20, 1984)) (statement of Rep. Kastenmeier).

A non-core proceeding is one "concerned only with State law issues that did not arise in the core bankruptcy function of adjusting debtor-creditor rights." *In re Arnold Print Works, Inc.,* 815 F.2d at 166 (quoting 130 Cong.Rec. H1848 (daily ed. March 21, 1984)) (statement of Rep. Kindness). Here, Comco argues that its dispute with Stad is nothing more than a breach of contract action between two nondebtors. This Court disagrees. The dispute between Comco and Stad is inextricably linked to the bankruptcy court's Sale Order. That Order set forth the rights Comco could assert vis-a-vis Stad and clearly indicated that Comco could not hold Stad liable for any of Faraldi's defaults.

But apparently that is just what Comco is attempting to do. It sought from Stad rent payments owed to it by Faraldi. It also sought to terminate Stad's lease, shortly after Stad took possession of the premises pursuant to the Sale Order, on the basis of the alleged sprinkler and plumbing problems, problems that predated Stad's possession. Thus, this dispute falls squarely within the bankruptcy court's core jurisdiction. *See In re White Motor Credit Corp.,* 75 B.R. 944, 947–48 (Bankr.N.D.Ohio (1987) (bankruptcy court has "jurisdiction to interpret and enforce prior orders includes purchasers' actions for declaratory and injunctive relief to enforce orders of sale."); 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

It should also be noted that in the Sale Order, the bankruptcy court explicitly retained continuing jurisdiction to resolve any dispute arising from that Order. Moreover, it has not escaped this Court's notice that the bankruptcy court consistently ruled against Comco and for that reason Comco may well desire another forum. However, as noted in *Orion,* forum shopping is to be prevented. Finally, Comco's argument that the bank-

ruptcy court lacks jurisdiction to hear the adversary proceedings because Comco's appeal divested it of jurisdiction over the Sale Order, is also without merit. Inasmuch as this Court has dismissed that appeal as moot, the bankruptcy court has not been divested of jurisdiction.

### III. *CONCLUSION*

For the above-stated reasons, Comco's appeal is dismissed as moot. Additionally, Comco's motion to withdraw the bankruptcy reference is hereby denied.

SO ORDERED.