

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2000

# In Re: Rickel Home

Precedential or Non-Precedential:

Docket 98-7181

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"In Re: Rickel Home" (2000). *2000 Decisions*. Paper 73.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/73

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 6, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7181

IN RE: RICKEL HOME CENTERS, INC.,
       Debtor

L.R.S.C. CO.,
       Appellant

v.

RICKEL HOME CENTERS, INC.; STAPLES, INC.

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civ. No. 96-cv-00026)
District Judge: Hon. Joseph J. Farnan, Jr.

Argued September 7, 1999

Before: SLOVITER and ROTH, Circuit Judges, and
POGUE, Judge, United States Court of International Trade*

(Filed: April 6, 2000)

Robert E. Gerber
Fried, Frank, Harris, Shriver
 & Jacobson
New York, NY 10004

_____
* Hon. Donald C. Pogue, Judge, sitting by designation.


        Brendan L. Shannon
        Young, Conaway, Stargatt & Taylor
        Wilmington, DE 19899-0391

         Attorneys for Rickel Home
        Centers, Inc.

        Barry W. Frost (Argued)
        David A. Martin
        Teich, Groh & Frost
        Trenton, NJ 08619

        Allan R. Plapinger
        L.R.S.C. Co.

Lawrenceville, NJ 08648-4099

Attorneys for L.R.S.C. Co.

Norman L. Pernick
Saul, Ewing, Remick & Saul
Wilmington, DE 19899

Patrick Dinardo (Argued)
Gayle P. Ehrlich
Maria Carroll Furlong
Sullivan & Worcester
Boston, MA 02109

Attorneys for Staples, Inc.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

L.R.S.C. Co. ("LRSC") appeals an order of the United States District Court for the District of Delaware that authorized the assignment of its lease with debtor Rickel Home Centers, Inc. to Staples, Inc., both of which are appellees, and that struck from that lease a provision limiting the tenant's use of the premises to a "Channel Home Center." The principal issue on appeal is whether LRSC's failure to obtain a stay of the order has rendered its appeal moot. If not, we must consider LRSC's various challenges on their merits.

I.

LRSC is the landlord of a shopping center in Lawrence Township, New Jersey (the "Lawrence center"). The

Lawrence center contains a variety of tenants including, inter alia, stores that sell furniture, music and electronics items, clothing, shoes, and auto parts, as well as restaurants and banks. The center also contains three anchor stores. One is a Burlington Coat Factory. Another is an Acme supermarket. The third was formerly operated by Rickel, the debtor, as a home improvement store. Rickel is the successor in interest to Channel Companies, Inc. (Channel), which had a lease from LRSC for premises covering approximately 38,000 square feet of retail space ("the Lease"). The Lawrence center premises had been used as a home improvement store since 1976 in accordance with a use provision contained in Article 10 of the Lease, which provides:

Use

    ART. 10. Tenant may use the Premises as a Channel
    Home Center similar in operation to a majority of the
    Channel Home Centers then in operation in New
    Jersey, and except as provided herein, for no other
    purpose. . . . Notwithstanding anything to the contrary
    contained in this Article 10, provided Tenant has
    complied with the provisions of Article 15B hereof
    [which effectively requires the landlord's consent], any
    non-"Successor" or non-"Affiliate" (as defined in Article
    15A) assignee or sublessee of Tenant may use and
    operate the Premises for any lawful retail purpose,
    subject to the restrictions contained in Article 15B
    hereof.

Addendum to Appellant's Br. at 1.

Article 10 references Article 15 of the Lease, which
provides, inter alia, (1) that the tenant may assign or
sublease any portion of the premises to a successor entity
-- one resulting from the consolidation, merger, or transfer
of substantially all of the tenant's assets -- without
providing notice to or obtaining the consent of LRSC, and
(2) that LRSC may terminate the Lease upon an assignment
or sublease of more than 80 percent of the premises by the

tenant to any non-successor entity:[1] The original term of
the Lease was for fifteen years with three five-year options
to renew. One option was exercised by Channel on January
29, 1991. Its successor Rickel sought to renew for another
five years on January 29, 1996 although the Lease was
apparently in default at that time. However, on January 10,
1996 Rickel had filed a voluntary petition for relief under
Chapter 11 of the Bankruptcy Code. It remained in
possession and continued its retail operations as debtor-in-
possession.

_____

1. The relevant language is as follows:

    "Assigning, Mortgaging, Subletting

    ART. 15A. Tenant shall have the right, without Landlords [sic]
    consent and without any requirement to notify Landlord as provided
    in B below, to (A) assign its interest as tenant under this Lease
or

    sublet any portion of the Demised Premises at any time or times to
    (i) a successor person, firm or corporation resulting from
    consolidation, merger or from transfer of substantially all of

Tenant's

      assets, (herein referred to as "Successor") . . . .

      B.1. Tenant may assign this Lease, or sublet or underlet part or
      or [sic] all of the Demised Premises.

      2. Notwithstanding the foregoing, Tenant shall notify Landlord
      at least thirty (30) days prior to the effective date of any
      assignment [or subletting of more than 80 percent of the
      premises] of this Lease to any non-Affiliate or non-Successor
      . . . . Landlord shall then have the option of terminating this
      Lease . . . .

      3. Notwithstanding the provisions of subsection 1 above,
      Tenant shall notify Landlord . . . of any subletting to any
      non-Affiliate or non-Successor of less than eighty (80%)
      percent of the Demised Premises . . . . Landlord shall then
      have the option of taking back the portion(s) of the Premises
      proposed to be sublet . . . .

      4. Any assignment . . . pursuant to the provisions of
      subsections B1, 2 or 3 above, shall prohibit the use of the
      Premises by such assignee or sublessee for any use which
      is on the date of execution of this Lease or at the time of
      such assignment or sublease the principal use of any tenant
      located in the Shopping Center. . . .

Addendum to Appellant's Br. at 2-4.

On December 10, 1996, LRSC filed a motion in the
Bankruptcy Court seeking an order (1) compelling Rickel to
assume or reject the Lease prior to the March 6, 1997
deadline established by the court for the assumption or
rejection of non-residential real property leases and (2)
declaring void Rickel's prior exercise of its option to renew
the Lease for another term. The parties subsequently
entered into a stipulation in which Rickel agreed to file a
motion to assume or reject the Lease on or before February
18, 1997 and LRSC agreed that Rickel had effectively
exercised its option to extend the Lease until January 31,
2002. Rickel did move to assume the Lease on February 18,
1997. The Bankruptcy Court granted that motion and
directed Rickel to pay almost $18,000 to cure its default.

After settling the dispute with LRSC, Rickel continued to
operate as debtor-in-possession and attempted to
reorganize its operations. It subsequently concluded that it
would be unable successfully to reorganize and determined
to wind up its operations and liquidate its retail store
inventories and remaining assets. On October 24, 1997, the
Bankruptcy Court entered an order granting Rickel's

motion to liquidate its inventory and sell its furniture, fixtures, equipment, and other personal property (FF&E). The inventory was subsequently sold in a bulk sale. Thereafter, the leases to which Rickel was a party were its most substantial remaining assets.

Rickel hired a broker to market the leases and received numerous offers. Among them was one from Staples to purchase a package of forty-one leases, including the Lawrence center Lease, for $35.5 million. The offer allowed the purchaser to assign its rights to any nominee, although Rickel and Staples anticipated that any such nominee would be a Staples affiliate and would operate a Staples office superstore on the premises. Staples planned to occupy 24,000 of the 38,000 square feet of the Lawrence center premises as a Staples store and to sublet the balance.

On February 12, 1998, Rickel sought court approval for its proposed transaction with Staples. Specifically, Rickel moved for an order authorizing it "to sell 41 of its leases [including the Lawrence Lease] to Staples (or its nominee)

. . . ."2 Rickel also sought to invalidate various provisions contained in some or all of the leases, including terms "providing in substance that the premises may be used only for a `Rickel' or `Channel' store[,] . .. . only for a `Home Center' store or for the sale of goods typically sold therein[, or terms] . . . . . conditioning assignment on landlord consent . . . ."3

LRSC objected, arguing, inter alia, that these lease provisions were integral to the bargain it had struck with Rickel and also that by seeking to excise or waive these terms Rickel was attempting to renege on the parties' prior stipulation allowing Rickel to assume the Lease and extend it for another term. On February 26, 1998, the District Court withdrew the reference to the Bankruptcy Court and held hearings relating to the proposed transaction on February 26, March 3, and March 4, 1998.

On March 6, 1998, the court granted Rickel's motion. The court determined that due to changes in the home improvement industry "the market for [home improvement centers] is either non-existent or in dire straits, [and that] such use restrictions would make it impossible . . . to assign the Lawrence Lease . . . ." In re Rickel Home Centers, Inc., 240 B.R. 826, 832 (D. Del. 1998). The court based this finding on the proffer of testimony by Joseph Nusim, president and chief executive officer of Rickel, that the four home center chains that formerly operated in New Jersey

were out of business or no longer operating in that state, a pattern apparently typical in the home center industry. Supp. App. at 128-29. Nusim's proffered testimony would have described the negative impact of large-scale home improvement centers like Home Depot on smaller home improvement centers like Rickel. Supp. App. at 129-30. The court also noted that LRSC did not contest this proffer and that LRSC's intended use for the Lawrence center premises, which involved dividing the premises into a series of smaller stores catering to specific home improvement needs,

_____

2. See Motion for an Order Authorizing Debtor to Assume (Where Applicable) & Sell & Assign Nonresidential Real Property Leases at 2 (Docket # 1275) (hereafter "Motion to Sell & Assign").

3. Id. at 15.

6

actually supported Rickel's claim that there were no potential buyers who could comply with the use restriction. The District Court therefore held that the Article 10 use provision amounted to a de-facto prohibition on assignment and permanently excised the use provision from the Lease.

The court also determined that the leases in the Staples transaction constituted 96 percent of Rickel's assets and that, as a result, Staples qualified as a "successor" under Article 15A of the Lease. This holding relieved Rickel of the need to notify LRSC of or obtain its consent to the assignment to Staples. The court did not excise the assignment provisions from the Lease and, in fact, held that "once the leases have been assigned to Staples . . . Staples will be subjected to all the provisions of the leases for purposes of their subletting efforts." In re Rickel, 240 B.R. at 837.

Purporting to act under sections 363, 365(a) and 365(f) of the Bankruptcy Code, the District Court granted Rickel's request to "sell 41 of its leases to Staples . . . and to assume (where applicable) and assign the selected leases that Staples desires to have assigned to it . . . ." Id. at 828. Furthermore, the court determined that Staples and its nominee would receive the protection of section 363(m) of the Bankruptcy Code, which protects good faith purchasers or lessees of property of the bankruptcy estate from the effects of a reversal or modification on appeal of the authorization to sell or lease the property, if the appellant fails to obtain a stay. The court specifically found that Staples was a good faith purchaser under this section, see District Court Order at 4 (Addendum to Appellant's Br. at 19), a finding that LRSC does not contest. The court finally

held that it would retain jurisdiction over certain subsequent disputes. The court did not specify the period for which it would retain jurisdiction, but the current term of the Lease expires on January 31, 2002.[4]

_____

4. Although LRSC agreed to extend the Lease through January 31, 2002 when it settled its dispute with Rickel, it contends in its brief that the Lease has "in excess of eight years to run . . . ." Appellant's Br. at 24. LRSC did not explain this discrepancy but we assume LRSC included five years from the remaining option to renew the Lease.

7

LRSC appealed but did not attempt to obtain a stay of the District Court's order. On appeal, it challenges several aspects of the District Court's order of March 6, 1998: it objects to the excision of the use provision, contends that the court erred by "altering the assignment provisions" of the Lease, Appellant's Br. at 18, challenges the court's decision to authorize a sale of the leases under section 363 of the Bankruptcy Code and to permit Staples to invoke the protections of the section 363(m) stay provision, and challenges the court's decision to retain jurisdiction to resolve disputes between it and Staples. In addition, LRSC challenges the procedure by which the court resolved factual disputes, arguing that the District Court erred in allowing the assignment of the Lease without direct testimony but based only upon proffers of evidence. [5]

Of course, Staples and Rickel defend the District Court's decision. They argue, inter alia, that the court properly excised the use provision, that it did not alter or excise the Article 15 assignment provision,[6] and that, regardless of the appropriateness of the procedure adopted by the District

_____

5. Under the procedure adopted by the District Court, Staples and Rickel were permitted to present evidence by proffer or by live witness testimony pertinent to the transfer of all 41 leases. Individual landlords were then permitted to respond "with an objection specific to their property," App. at 45, and could present evidence in support of that objection by proffer or by witness testimony, App. at 45–46. Each landlord, however, was limited to 15 minutes in which to present its objection. App. at 44, 46. It is not clear whether the 15 minute limit applied only to the objecting landlords or to the initial presentation by Staples and Rickel as well. Although the court apparently required each witness whose testimony was proffered to be present during the proffer, LRSC contends that it was denied the opportunity to cross-examine these potential witnesses. In lieu of cross-examination, the court permitted the attorneys for each side to ask questions of opposing counsel. App. at 58–61.

6. The District Court specifically found that "the assignment and subletting provisions are not facially unreasonable. Therefore, once Staples assumes the Lawrence Lease, Staples will be required to abide by these provisions." In re Rickel, 240 B.R. at 837. In response to our questioning at oral argument, counsel for Staples conceded that Staples would be bound by these provisions with respect to any attempt to assign the Lease or sublet the remaining 14,000 square feet.

8

Court, Rickel failed to proffer any evidence that created a dispute with respect to any material issue of fact. Additionally, Appellees argue that this appeal is mooted by section 363(m) of the Code and that, in the alternative, the appeal is equitably moot because events occurring after the District Court's decision prevent our granting effective relief. In their joint brief, Staples and Rickel assert that the transaction between them closed on or about April 1, 1998, that Staples has been in possession of the Lawrence center premises for almost seven months [now approximately twenty-four months], that a Staples store opened for business on August 1, 1998, and that Staples has spent over $900,000 in leasehold improvements to the premises. They append to the joint brief a photograph of the Staples storefront. LRSC has contested our ability to take notice of these facts, but it did not contest their accuracy either in its brief or at argument.

II.

Because this is an appeal from a district court exercising original jurisdiction in bankruptcy, our jurisdiction stems from 28 U.S.C. S 1291 rather than 28 U.S.C.S 158(d). See In re Marvel Entertainment Group, Inc., 140 F.3d 463, 470 (3d Cir. 1998). We exercise plenary review over the District Court's legal conclusions but will reverse findings of fact only if clearly erroneous. See id.

III.

We begin by briefly discussing the pertinent Bankruptcy Code sections.

A.

111 U.S.C. S 363

Section 363 permits the trustee, after notice and a hearing, to use, sell, or lease property of the estate outside of the ordinary course of business. 11 U.S.C. S 363(b)(1). For our purposes, Rickel, as debtor-in-possession, had the authority to exercise the same powers as the trustee. 11

U.S.C. S 1107(a); 11 U.S.C. S 1108; see also In re C&S Grain Co., Inc., 47 F.3d 233, 237 n.2 (7th Cir. 1995). 7 "Property of the estate" includes, inter alia, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. S 541(a)(1). As the legislative history makes clear, "[t]he scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action . . . . [and] also includes `title' to property, which is an interest, just as are a possessory interest, or leasehold interest, for example." H.R. Rep. No. 95-595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6323; S. Rep. No. 95-989, at 82 (1978), reprinted in 1978 U.S.C.C.A.N. 5785, 5868. Whether the debtor has an interest in property under section 541 is determined according to state law. See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490, 497 (3d Cir. 1998).

Significantly, section 363(m) also provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. S 363(m).

We have referred to section 363(m) as a "statutory mootness" provision. See Krebs, 141 F.3d at 497. In construing section 363(m), we have rejected a per se rule "mooting appeals absent a stay of the sale or lease at issue," id. at 498, and instead require that two conditions be met before an appeal becomes moot under section 363(m): (1) the underlying sale or lease must not have been stayed pending appeal, and (2) reversing or modifying the authorization to sell or lease would affect the validity of the sale or lease, see id. at 499; see also In re Lloyd, 37 F.3d

_____

7. For that reason, we will use the terms trustee and debtor-in-possession interchangeably throughout this opinion.

271, 273 (7th Cir. 1994) (although S 363(m) prevented court from annulling sale of land, appeal not moot where trustee

had not disbursed sale proceeds and debtor asserted right to recover from proceeds).

B.

111 U.S.C. S 365

Section 365 enables the trustee to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not. 11 U.S.C. S 365(a); see also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co., 83 F.3d 735, 741 (5th Cir. 1996) (section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed"); see generally 2 Norton Bankruptcy Law & Practice 2d S 39:1 (William L. Norton, Jr. ed., 1997) [hereafter "Norton"].

Because executory contracts and unexpired leases involve a continuing relationship between the debtor and other parties, section 365 "gives special treatment to rights and liabilities flowing from these contracts and leases." Id. S 39:1, at 39-6. If there has been a default in an executory contract or unexpired lease, the trustee may not assume it until the trustee: (1) cures or provides adequate assurance that it will promptly cure the default; (2) compensates or provides adequate assurance of prompt future compensation for actual pecuniary loss resulting from the default; and (3) provides adequate assurance of future performance under the contract or lease. 11 U.S.C. S 365(b)(1)(A), (B), (C). Once the trustee satisfies these requirements it may assume the contract or lease, but it must do so in its entirety. See Stewart Title Guar. Co., 83 F.3d at 741.

The Code, however, prevents enforcement of so-called ipso facto clauses that trigger a default upon a bankruptcy filing or upon "events or conditions that are likely to occur or exist around the time that a case is commenced." 3 Collier on Bankruptcy P 365.05[4] (Lawrence P. King ed., 15th ed. 1999). To that end, the requirements of section

11

365(b)(1) do not apply to defaults triggered by provisions relating to the insolvency or financial condition of the debtor, the commencement of a Chapter 11 case, or the appointment of a trustee in the case or a custodian before the case. 11 U.S.C. S 365(b)(2); see also  11 U.S.C. S 365(e)(1) (contract or lease may not be terminated or modified after commencement of case notwithstanding ipso facto clause, or applicable law, permitting such termination).

Shopping center landlords, even more than other non-debtor parties to executory contracts and unexpired leases, receive "extraordinary protection" under the Code. Collier, supra, P 365.02, at 365-17; see also In re Goldblatt Bros. Inc., 766 F.2d 1136, 1140 (7th Cir. 1985) (referring to "special protections available to shopping center landlords"). The right to assume a defaulted lease of real property in a shopping center, as with any executory contract or unexpired lease, is conditioned upon the trustee's provision of adequate assurance of future performance.

Section 365(b)(3), however, imposes a heightened standard for "adequate assurance of future performance" in shopping center leases. That standard requires adequate assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee . . . shall be similar to [that of] the debtor. . . .;
>
> (B) that any percentage rent due . . . will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other [agreement] relating to such shopping center; and
>
> (D) that assumption or assignment . . . will not disrupt any tenant mix or balance . . . .

12

11 U.S.C. S 365(b)(3).8

Having assumed an executory contract or unexpired lease, the trustee may elect to assign it. The Code generally favors free assignability as a means to maximize the value of the debtor's estate and, to that end, allows the trustee to assign notwithstanding a provision in the contract or lease, or applicable law, prohibiting, restricting, or conditioning assignment. 11 U.S.C. S 365(f)(1); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (S 365(f)(1) prevents anti-alienation and other clauses from defeating trustee's "ability to realize the full value of the debtor's assets"). Likewise, the Code prohibits the termination or modification of executory contracts or

unexpired leases notwithstanding lease or contract provisions or applicable law that permit termination or modification because of assignment of the lease. 11 U.S.C. S 365(f)(3).

The trustee may assign an executory contract or unexpired lease only if (A) it assumes the contract or lease in accordance with section 365 and (B) there is adequate assurance of future performance by the assignee. 11 U.S.C. S 365(f)(2). This assurance is necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability

_____

8. The pre-1984 definition of adequate assurance of future performance with respect to leased property in shopping centers included, inter alia, assurance that the assumption or assignment would not "breach substantially" any radius, location, use, or exclusivity provision in any other lease, financing agreement, or master agreement and would not "disrupt substantially" any tenant mix or balance. 11 U.S.C. S 365(b)(3)(C), (D) (1982) (amended 1984).

The 1984 amendments to the Bankruptcy Code, effective with respect to cases filed 90 days after July 10, 1984, imposed "a more restrictive view . . . in connection with radius, location, or use clauses in shopping center leases." Norton S 39:46, at 39-133. The amendments made assumption and assignment of shopping center leases expressly subject to all provisions of the lease being assigned, including use clauses, 11 U.S.C. S 365(b)(3)(C), and also deleted the "substantiality" standard from S 365(b)(3)(C), which requires adherence to other agreements affecting shopping centers, and from S 365(b)(3)(D), which requires that assumption or assignment not disrupt any tenant mix or balance.

13

arising from a post-assignment breach. 11 U.S.C.S 365(k); Wainer v. A.J. Equities, Ltd., 984 F.2d 679, 683 (5th Cir. 1993) (per curiam). Where the leased premises are in a shopping center, the assignee must meet the heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that "[t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed in order to facilitate assignment." Norton, supra, S 39:46, at 39-133.

IV.

We consider at the outset the contention of the Appellees that this appeal is now moot because the completed transaction is protected from reversal or modification under section 363(m) unless it was stayed pending appeal. LRSC argues that it was not required to obtain a stay under section 363(m), and relies primarily on our decision in In re

Joshua Slocum, Ltd., 922 F.2d 1081(3d Cir. 1991). Rickel and Staples, citing our later decision in Krebs , 141 F.3d 490, respond that Slocum is inapplicable and, in the alternative, that even if section 363(m) were inapplicable, this appeal is nonetheless barred by the doctrine of equitable mootness. We address these issues first, as only if we find that this appeal is not moot will we reach the merits of LRSC's appeal. Id. at 1084–85.

A.

LRSC's argument that the appeal is not moot notwithstanding its failure to obtain a stay stems from its contention that section 363(m) is inapplicable, that the transaction between Rickel and Staples was the assignment of a lease, and that the District Court erred in characterizing the assignment as a sale. Unlike section 363, which applies to the use, sale or lease of property, section 365, which applies to the assignment of a lease, does not contain a statutory mootness provision. LRSC thus states, "[s]ince Congress did not provide for the sale of executory contracts or unexpired leases [in section 365], . . . the transaction between the Debtor and Staples is, in fact, an assignment of a lease and not a sale [under section 363]."

14

Appellant's Br. at 22. Although LRSC does not elaborate much beyond this, its argument has some facial plausibility. However, ultimately it is not persuasive.

This court's most recent consideration of this issue was in connection with an executory contract in Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc., 141 F.3d 490 (3d Cir. 1998). Unexpired leases, like executory contracts, are included in the definition of "property of the estate" under section 541. See id. at 497 (franchise agreement was executory contract and property of the estate); In re Arizona Appetito's Stores, Inc., 893 F.2d 216, 218 (9th Cir. 1990) (leasehold interest is property of the estate if debtor is lessee at time petition is filed). Section 363(b)(1) authorizes the sale of such property outside the ordinary course of the debtor's business. Arguably, then, executory contracts and unexpired leases may be sold pursuant to section 363 and the mootness provision of 363(m) would apply to such sales.

However, section 365, which lacks a mootness provision, contains specific rules governing the procedure for assuming, rejecting, and assigning executory contracts and unexpired leases and provides explicit protections for non-debtor parties to those contracts, especially shopping center landlords. LRSC proposes that we hold that only section

365 governs the transfer of executory contracts and unexpired leases. Cf. Comco Assocs. & SPA 77K L.P. v. Faraldi Food Indus. Ltd., 170 B.R. 765, 770 (E.D.N.Y. 1994) (holding lease assignment moot but recognizing that "the Code has distinct provisions for sales and leases on the one hand and assignments on the other"). Indeed, LRSC argues that our decision in Slocum mandates a holding that section 363(m) does not apply to this case. That argument fails to take into account the effect of our subsequent decision in Krebs regarding the scope of section 363(m) and the effect of the failure to obtain a stay.

In Slocum, the bankruptcy court had authorized the trustee for the debtor lessee to assume a lease for retail space, excise an average sales clause allowing either the lessee or the landlord to terminate the lease if the lessee's average yearly sales fell below a set amount, and assign the lease pursuant to section 365. The bankruptcy court

15

viewed the average sales clause as a disguised anti-assignment provision. The district court affirmed, and the landlord appealed. This court reversed, holding that the bankruptcy court had erred in ruling that the landlord's property was not a shopping center, and that, in light of the shopping center provisions of the Code, the bankruptcy court lacked the authority to excise the average sales clause from the lease.9

Before reaching this issue, we had to consider the trustee's motion to dismiss the appeal. The trustee argued that the "principle of finality embodied in S 363(m) . . . should be applied to assignments under S 365." Slocum, 922 F.2d at 1085. Significantly, the trustee invoked underlying principles of finality rather than the statute, as he conceded that section 363(m) "does not apply to assignments of leases under S 365." Id.  Both the majority and the dissent in Slocum declined to extend section 363(m) to cover the transaction at issue there.10  The majority noted that only sections 363(m) and 364(e) of the Code specifically require a stay pending appeal, and stated "[w]hile S 363(m) contains a provision requiring a stay, the section that applies in this case, S 365, does not." Id. The majority held

_____

9. The majority recognized that the 1984 amendments applied to the case before it. See Slocum, 922 F.2d at 1086 (discussing 1984 amendments). The debtor had filed for Chapter 11 in November of 1988, see id. at 1083, and the 1984 amendments were effective with respect to cases filed 90 days after July 10, 1984, see supra note 8. In analyzing this issue, however, the Slocum majority quoted the pre-1984 version of section 365(b)(3) that was no longer in force. See id. at 1086 n.3. Its

subsequent discussion appeared to follow therefrom. For example, the majority stated that "Congress did not envision literal compliance with all lease provisions; insubstantial disruptions in, inter alia, tenant mix,

and insubstantial breaches in other leases or agreements were contemplated and allowed." Id. at 1090 (citing 11 U.S.C. S 365(b)(3)(C), (D)); see supra note 8 (discussing how Congress removed the "substantiality standard" from these sections in 1984). We do not suggest that this affected the result reached in that case.

10. The dissent, the author of this opinion, relied on "well-established rules of justiciability" and "the particular need for finality in bankruptcy"
to find "the appeal of a completed lease assignment to a non-party moot unless the appellant has sought a stay pending appeal." Slocum, 922 F.2d at 1093 (Sloviter, J., dissenting).

16

that "under the facts of this case [the landlord] was under no obligation to obtain a stay." Id.

The Slocum majority also rejected the argument that the appeal was equitably moot. The majority regarded the landlord's appeal as from the order excising the average sales clause, as to which effective relief was still possible, rather than from the assignment of the lease, which had already taken place in the absence of a stay. See id. at 1086 & n.2. Of relevance to the issue before us, the majority stated, "[i]f we started our analysis with the assignment, and not with excisement of [the average sales clause], we would probably reach the same result[as the dissent]." Id. at 1086 n.2.

We addressed the issue of mootness under section 363(m) again in Krebs. The debtor, Valley Motors, Inc. ("Valley"), an automobile dealer, had entered into a pre-petition buy-sell agreement for its interest in a Jeep-Eagle franchise with Krebs, another automobile dealer. Krebs had paid the first half of the purchase price due under the buy-sell agreement, Chrysler had approval of the transfer, and the parties awaited resolution of protests by competing dealers when Valley filed for Chapter 11 bankruptcy. After motions and orders not relevant here, Valley filed three motions: one to reject the buy-sell agreement with Krebs, the second to sell all its franchises and other assets to a third dealer, and the third to assume its three franchise agreements. The assumption was a prerequisite to the sale Valley sought in the second motion. The bankruptcy court granted Valley's motion to reject the buy-sell agreement, overruled the objection of Krebs and Chrysler to the three motions, permitted the third dealer to withdraw its offer to

purchase Valley's assets, and held an auction of the three franchises. Krebs purchased the franchises but refused to close on the sale. The bankruptcy court ordered it to do so, and Krebs appealed.

In the portion of our opinion of relevance here, we held that Krebs's appeal was moot under section 363(m). We focused on the undisputed status of the underlying franchises as executory contracts. Id. at 496. We disagreed with Krebs's contention "that the franchises were assumed and assigned under section 365, which exclusively governs

the rejection, assumption, and assignment of executory contracts." Id. at 497. We framed the issue as: "whether section 365 [which does not have a statutory mootness provision] is the exclusive provision governing the sale of the franchises or whether the mootness provision in section 363 also covers this situation. In other words, . . . whether assignments of the franchises under section 365 are also sales of estate property subject to section 363(m)." Id. at 497.

After noting that section 363(b) permits the trustee to "use, sell, or lease . . . property of the estate," id.; 11 U.S.C. S 363(b), which includes "all legal or equitable interests of the debtor in property as of the commencement of the case," id.; 11 U.S.C. S 541(a)(1), we determined that under Pennsylvania law the franchise agreements "are interests in property, and as such are property of the estate under section 541." Krebs, 141 F.3d at 498. We continued, "[t]herefore, section 363(m) governs the sale of the franchises here, notwithstanding that section 365 applies to the particular mechanics of conveyance."11 Id. However, we eschewed any per se rule that the failure to obtain a stay of a sale authorized under section 363(b) automatically mooted an appeal and held instead that section 363(m) would moot an appeal only when reversal or modification of the authorization would affect the validity of the sale or lease. See id. at 499.

Krebs distinguished Slocum on the ground that the trustee in Slocum never attempted to sell the lease under section 363, the bankruptcy court never purported to authorize a section 363 sale, and the parties "conceded that section 363(m) did not apply in cases where the Trustee merely assigns a lease under section 365." Id. at 498. Here, we are faced with the precise facts that Krebs noted were significant by their absence in Slocum. Rickel specifically

_____

11. Although the Krebs court did not explain the latter phrase, it appears

that it viewed section 365 as establishing the requirements for assumption and assignment of executory contracts and unexpired leases, such as the provision of adequate assurance of future performance, and that it sought to ensure those requirements could not be circumvented by the parties' characterization of the transaction as a sale rather than an assignment.

requested authorization to sell the 41 Staples leases, see Motion to Sell & Assign at 8, and the District Court explicitly authorized a sale of the leases pursuant to section 363, despite LRSC's contention that section 363 was inapplicable to this transaction. Although LRSC argues that the District Court erred in characterizing the transaction as a "sale" under section 363(m), it does not argue that sales are not subject to the protection from reversal absent a stay.

A determination of section 363(m) mootness in the case before us necessarily follows from our holding and analysis in Krebs. Rickel's unexpired lease is treated in the Bankruptcy Code the same as the executory contracts in Krebs. Both executory contracts and unexpired leases, for example, are included in the definition of "property of the estate" contained in section 541.12  Furthermore, executory contracts and unexpired leases are equally subject to the requirements for assumption, rejection, and assignment established by section 365.

We are aware that "[t]he application of CodeS 363 . . . to executory contracts is not without controversy." Lee R. Bogdanoff, The Purchase and Sale of Assets in Reorganization Cases -- of Interest and Principal, of Principles and Interests, 47 Bus. Law. 1367, 1425 n.215 (1992) (referencing the split in authority regarding whether a lessor is entitled to adequate protection under section 363(e)). But, given our holding in Krebs that "section

_____

12. As discussed supra, section 541 defines "property of the estate" to include, inter alia, "all legal or equitable interests of the debtor in property [defined by state law] as of the commencement of the case." The parties do not dispute that a leasehold interest is a property interest under New Jersey law. Furthermore, section 541 excludes from its definition of "property of the estate" those interests of the debtor as lessee of nonresidential real property that have "terminated at the expiration of the stated term of such lease before the commencement of the case" and those interests that have "terminated . . . during the case."

11 U.S.C. S 541(b)(2). These exclusions imply that leasehold interests of

nonresidential real property, like the interest at issue here, are property

of the estate when they do not terminate before or during the bankruptcy case. LRSC does not argue that the Lawrence Center Lease falls within either of these exclusions.

19

363(m) governs the sale of the franchises," whereas "section 365 applies to the particular mechanics of conveyance," Krebs, 141 F.3d at 498, we would be creating an unwarranted distinction between executory contracts and unexpired leases (whether or not the lease is in a shopping center) if we were to accept LRSC's argument.

The result reached by Krebs, and that we reach here, is supported by decisions from other courts of appeals that treated assignments of leasehold interests as sales of property under section 363 and applied section 363(m) to such assignments. For example, in In re Adamson Co. Inc., 159 F.3d 896 (4th Cir. 1998), the debtor asked the Court of Appeals for the Fourth Circuit to dismiss for mootness the landlord's appeal of an order authorizing a sale of most of the debtor's assets, including the lease to its manufacturing plant. The landlord argued that it was not required to obtain a stay because section 365 rather than section 363 governed the assignment of the debtor's unexpired lease. The court rejected this argument, stating that "[i]t is elementary that a leasehold is personal property and possibly of value to the debtor's estate, thus the assignment of a lease . . . is a sale of property to whichS 363(m) applies." Id. at 898 (emphasis added).

Likewise, in In re Exennium, Inc., 715 F.2d 1401 (9th Cir. 1983), the court reversed the order of the Bankruptcy Appellate Panel voiding the sale of real estate leases and personal property. The Court of Appeals held that an appeal from an order "permitting the assumption and assignment of leases" was moot under section 363(m). Id. at 1404.13 Although, unlike this case, the assignments of

_____

13. The district court in Comco, 170 B.R. 765 (E.D.N.Y. 1994), also dismissed as moot the landlord's appeal of the assignment of the debtor's shopping center lease and its remaining assets but differed in its approach. The court declined to extend section 363(m) to assignments when the assignment is inextricably linked to a section 363 sale, which it believed was the view adopted in In Re Stadium Management, 895 F.2d 845 (1st Cir. 1990). The Comco court stated,"[b]esides stretching the plain language of S 363, this approach does not account for those situations where there is an assignment without a sale." Comco, 170 B.R. at 770. The court also believed that the Exennium court failed to

leases in both Adamson and Exennium were in conjunction
with the sale of all or almost all of the debtors' remaining
assets, Rickel had already disposed of all or almost all of its
remaining assets at the time of the transaction with
Staples. The District Court emphasized that the transfer of
the unexpired leases to Staples involved 96 percent of
Rickel's remaining assets. LRSC proffered no evidence
countering Rickel's proffer supporting this finding, and even
now has not suggested that there is contrary evidence that
it could provide.

These cases reflect the policies of section 363(m)"not
only [to afford] finality to the judgment of the bankruptcy
court, but particularly to give finality to those orders and
judgments upon which third parties rely." In re Abbots
Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986)
(internal quotations omitted). The strength of these policies
is reflected in numerous other decisions of the courts of
appeals rejecting as moot an appeal from an order
authorizing a sale of estate property under section 363
when the transaction has been completed. See, e.g., In re
Sax, 796 F.2d 994, 997–98 (7th Cir. 1986) (sale of yacht
moot despite argument that yacht was not property of the
estate because "[s]ection 363(m) does not say that the sale
must be proper under S 363(b)"); In re Stadium
Management, Inc., 895 F.2d 845, 849 (1st Cir. 1990)
(assignment of sublease as part of sale of stadium moot,
citing Sax with approval); see also Pittsburgh Food &
Beverage, Inc. v. Ranallo, 112 F.3d 645, 650–51 (3d Cir.
1997) (holding that, at least where assets were"colorably
within [the court's] jurisdiction," an appeal from a sale of
assets was moot despite argument that court lacked
jurisdiction over the assets); In re Gilchrist , 891 F.2d 559,

_____

recognize that although an assignment is a "species of sale, . . . the
Code

has distinct provisions for sales . . . and assignments." Id. at 770.
Instead, the Comco court, expressing concern that the assignees would
not receive exactly what the bankruptcy court ordered if the assignment
were invalidated or the terms of the assignment changed, dismissed the
appeal as moot because "[t]his Court cannot now change the terms of
that transaction without throwing into question the validity of the entire
transaction." Id.

561 (5th Cir. 1990) (appeal moot despite argument that

bankruptcy court had no jurisdiction to authorize sale).

The policies undergirding section 363(m) are also reflected in our cases recognizing "the broader

interpretation of mootness applied in bankruptcy cases, often referred to as `equitable mootness.' " In re Continental Airlines, 91 F.3d 553, 558 (3d Cir. 1996) (en banc) (citations omitted). This doctrine holds that "[a]n appeal should . . . be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." Id. at 559 (quoting In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993)); see also In re Cantwell, 639 F.2d 1050, 1054 (3d Cir. 1981) (appeal from order dissolving stay of debtor's discharge moot where subsequent order granting discharge had not been appealed); Markstein v. Massey Assocs., Ltd., 763 F.2d 1325, 1327 (11th Cir. 1985) (court was powerless to rescind foreclosure sale on debtor's property where debtor failed to obtain stay of order permitting foreclosure).14 These mootness principles further the need for finality of bankruptcy transactions involving third parties and recognize that "in addition to those situations covered under 11 U.S.C. S 363(m) and S 364(e), a myriad of circumstances can occur that would necessitate the grant of a stay pending appeal in order to preserve a party's position." In re Highway Truck Drivers & Helpers Local 107, 888 F.2d 293, 298 (3d Cir. 1989) (appeal from grant of relief from automatic stay moot where state supreme court order relieved debtor from liability to appellants).

Concededly, the shopping center provisions of section 365(b)(3) of the Code applied to the assignment of the Lease, and the provisions of the Lease (with the exception of the excision of the use restriction in Article 10) continue to apply. For example, at oral argument, Staples conceded

_____

14. Although we reference the principles underlying equitable mootness, we do not base our holding on that doctrine which has been used most frequently in cases where the reorganization has been substantially consummated. See, e.g., In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996). In light of our precedent in Krebs applying section 363(m), we need not consider whether equitable mootness could also be relied on as the basis for our holding.

that it could not assign or sublet to an entity that would violate another tenant's exclusive use or disrupt the tenant mix in the Lawrence center.

Given the policies underlying section 363(m) and the

series of cases that emphasize the importance of securing a stay, we are perplexed by LRSC's failure even to request a stay. Although there was a suggestion from LRSC at oral argument that the bond required for a stay would have been costly, it acknowledged it made no attempt to seek permission for a lower bond. Moreover, it failed to seek a stay limited to the Lawrence center lease, which might have substantially reduced the cost of a bond. In short, LRSC did nothing other than appeal and failed to take steps that might have minimized the dislocation a reversal of the assignment would cause the parties at this time.

B.

As we noted in Krebs, "section 363(m) would not moot every appeal not accompanied by a stay." Krebs, 141 F.3d at 499. That section only "restrict[s] the results of a reversal or modification of a bankruptcy court's order authorizing a sale or lease, if reversal or modification would affect the validity of the sale or lease." Id. Krebs relied for its analysis on our earlier opinion in In re Swedeland Dev. Group, Inc., 16 F.3d 552, 559–63 (3d Cir. 1994) (en banc), where we examined language in section 364(e) of the Code similar to section 363(m) about the effect of the appellant's failure to secure a stay pending an appeal of an authorization to obtain credit or incur debt or of a grant of priority or a loan. We reasoned in Swedeland that because section 364(e) limits the consequences of the reversal or modification of an order entered under section 364, it is not section 364(e) itself that requires that the appeal be dismissed. Id. at 559. Instead, the appeal would be moot if the relief sought would adversely affect "the validity of the debt incurred . . ." Id. at 560.

Applying that reasoning here, we note that once the District Court granted Rickel authorization to assume the Lease and assign it to Staples, the parties completed the transaction. Staples, relying on that authorization, took

23

possession and expended substantial funds to renovate and redesign the property to fit its business. Any revocation of the authorization would necessarily adversely affect the validity of the assignment. The same is true as to LRSC's challenge to the District Court's use of evidentiary proffers, as those proffers underlay the court's order on appeal.

We must consider whether the same is true of the portion of the District Court's order that excised Article 10 from the Lease. That decision was based on the District Court's conclusion that compliance with the use limitation to establish only a home improvement center was not feasible

as such a market was non-existent. Patently, reversal of the excision of the use provision as to Staples would adversely affect the validity of the transfer to it, as it has now been established as an office supply center, not a home improvement center.

It is not clear that LRSC argues that the court erred by striking the use clause with respect to subsequent assignments or subleases by Staples, rather than arguing that no assignment at all should have been permitted without the use provision. See, e.g., Appellant's Br. at 9 ("LRSC objects to the . . . assignment made with the requested deletions . . . ."). In any event, the record demonstrates that a reversal of the District Court's decision to permanently strike the use restriction from the Lease would affect the validity of the assignment to Staples. Unlike Slocum, where we reversed the bankruptcy court's order excising an average sales clause from a lease after finding that the record did not support the trustee's claim that a reversal would overturn the assignment, and effectively rescind the lease, see Slocum, 922 F.2d at 1086 n.2,15 Staples argued here that the District Court should excise the use provision "not just for the purpose of the

_____

15. This discussion occurred in the Slocum  majority's analysis of equitable mootness, in which the majority responded to the dissent's argument that its decision would overturn a consummated transaction. 922 F.2d at 1086 n.2. The majority disagreed that its holding would have so drastic an effect. By contrast, our inquiry under section 363(m) asks not whether reversal or modification on appeal would rescind the sale but whether such a decision would "affect the validity of the sale." Krebs,

141 F.3d at 499; Pittsburgh Food & Beverage, 112 F.3d at 651.

assignment to Staples, but permanently, because it destroys the value of the leasehold to say it can only be used for a typical Channel Home Improvement Center when . . . [such a store] doesn't exist anymore." Supp. App. at 134. The District Court accepted this argument based on proffered testimony by Rickel's CEO that home improvement centers similar to Rickel had been driven out of business or were struggling and that Rickel's efforts to market its leases had generated no interest whatever from such an entity. Supp. App. at 130. The court further noted that LRSC had proffered no evidence to rebut Staples's claim. See In re Rickel, 240 B.R. at 831. We thus need not decide whether the court erred in striking the use provision, because this record is sufficient for us to conclude that applying that provision to future assignments

by Staples would seriously affect the validity of the transaction. Cf. In re Stadium Management, 895 F.2d at 849 (absent a stay, appeal is moot even though appellate court would decide issues differently).

Common sense also leads us to conclude that reversal of the District Court's decision to excise the use provision would affect the validity of the transaction between Rickel and Staples. As a result of that transaction, Staples received a lease that it could assign or sublease in accordance with various other lease provisions. 16 Were Staples limited to assigning or subleasing to a Channel Home Center or to an entity "similar in nature" to a Channel Home Center, the value of the Lease would be seriously affected and this would "impact the validity of the sale." Krebs, 141 F.3d at 499. We have held appeals moot under section 363(m) where appellant sought lesser forms of relief, using similar analysis. See, e.g., Pittsburgh Food & Beverage, 112 F.3d at 649-50 (relief that would demonstrate sale was flawed, including finding that trustee and purchaser knew bankruptcy court lacked authority to

_____

16. Indeed, Article 15B.4. of the Lease, which the District Court did not excise, requires any assignment or sublease to any non-"Successor" or non-"Affiliate," as defined in the Lease, to prohibit the use of the premises "for any use which is on the date of execution of this Lease or at the time of such assignment or sublease the principal use of any tenant located in Shopping Center." Addendum to Appellant's Br. at 4.

25

sell assets and finding that sale price was inadequate, would affect the validity of the sale).

As discussed above, supra note 8, we must recognize the Bankruptcy Code's requirement that the assumption and assignment of a shopping center lease be subject to all provisions of the lease being assigned, including use clauses. See 11 U.S.C. S 365(b)(3)(C). Nevertheless, because reversal of the District Court's decision to excise the use provision would affect the validity of the transaction between Rickel and Staples, LRSC's appeal on this point, absent a stay, is moot.

C.

There remains only to consider the provision of the District Court's order whereby it retained jurisdiction to resolve disputes involving the Lease, which LRSC requests us to reverse. We cannot conclude that this issue is moot because reversal or modification of that order would not affect the validity of the assignment to Staples.

Nonetheless, we believe this issue is not ripe for review.

In its order, the court purported to retain jurisdiction to "construe and determine any disputes under this Order or under the Agreement [between Rickel and Staples]." Addendum to Appellant's Br. at 29. In its opinion, the court explained that "should any landlord attempt to enforce a lease provision in an unreasonable manner, Staples is free to return to this Court for the appropriate relief. Likewise, if Staples attempts to unreasonably disregard any reasonable provision in its efforts to sublet the property, such that the landlord believes Staples is violatingS 365 of the Bankruptcy Code, the landlord may also return to this Court for the appropriate relief." In re Rickel, 240 B.R. at 837. These statements suggest that the court envisioned a wide variety of future disputes between Staples and LRSC as falling within its retained jurisdiction.

LRSC interprets the court to have retained jurisdiction over lease disputes between it and Staples that would have no impact on the bankruptcy estate and invokes the rule that "[s]uits between purchasers of property from the estate and third parties are . . . not encompassed within the

26

bankruptcy jurisdiction of the district courts." Collier, supra, P 3.01[4][c], at 3-30 n.91; see also In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir. 1989) ("The bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."). Staples and Rickel, by contrast, argue that the court merely retained jurisdiction to interpret and enforce its own order.

As neither party is now seeking to invoke the court's jurisdiction with respect to a particular dispute, a ruling on the court's jurisdiction in the future would "constitute nothing more than an advisory opinion based on a hypothetical scenario." 15 James Wm. Moore et al., Moore's Federal Practice S 101.75, at 101-152 (Matthew Bender 3d ed. 1999). The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." Abbott Lab. v. Gardner, 387 U.S. 136, 148 (1967); In re Drexel Burnham Lambert Group, Inc., 995 F.2d 1138, 1146 (2d Cir. 1993). Whether an issue is ripe for review depends on the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n., 461 U.S. 190, 201 (1983); Pic-A-State PA, Inc. v. Reno, 76 F.3d 1294, 1298 (3d Cir. 1996).

Absent an actual dispute, any opinion we might render on the appropriateness of district court jurisdiction would be "an exercise in futility." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 648 (3d Cir. 1990). Indeed, no dispute may arise, and we are confident that none of the parties will create one to test the issue. Accordingly, this issue is not fit for review at this time and the parties have not shown that they will be subject to hardship if this court withholds consideration at this time. In any event, if a dispute arises, it is the District Court that should determine in the first instance the propriety of its exercise of jurisdiction in that situation.

V.

For the foregoing reasons, we will dismiss LRSC's appeal of the District Court's order authorizing the Staples

27

transaction and excising the use provision as moot pursuant to section 363(m) of the Bankruptcy Code because reversal or modification of that order would affect the validity of the assignment. The only portion of LRSC's appeal that is not moot is its appeal of the District Court's order retaining jurisdiction over future disputes. That issue, however, is not ripe for review. We will therefore dismiss that portion of LRSC's appeal as well.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

28